## U. S. OIL & REFINING CO. v. GLENN OIL CO.*
### (No. 1143; January 20, 1925; 232 Pac. 515)
### (Rehearing Denied; 237 Pac. 1105)

SALES—PAYMENT IN GOODS—MEASURE OF RECOVERY—MEASURE OF RECOVERY BY SELLER REFUSING TO ACCEPT GOODS.

1.  Where balance, not objected to by buyer of fuel oil, except on theory that contract entitled it to pay in crude oil, remained due, seller, after deduction of all items objected to, and giving credit for all crude oil delivered, *held* that, though it refused to accept crude oil tendered when market price was $3.25 and buyer afterwards sold it to others for $1.70, it was entitled to 170/325 of such undisputed balance.

*NOTE—See Headnote—(1) 35 Cyc. p. 579.

APPEAL from District Court, Weston County; HARRY P. ILSLEY, Judge.

Action by the U. S. Oil & Refining Company against Glenn Oil Company. Judgment for defendant, and plaintiff appeals.

*Edwin L. Brown* for appellant.

Under the pleadings, the record and the evidence, the Court erred in refusing to enter judgment for the plaintiff as prayed, and as modified by the consent of the appellant to reduce his claim $94.50. The Court also erred in adjudging that neither party could recover and that each party must pay its own costs. The judgment below is contrary to law and the evidence, and this Court should direct the lower Court to enter judgment in favor of the appellant for the amount prayed in its petition, less $94.50.

*E. C. Raymond* for respondent.

Where there is a conflict of evidence the appellate Court will not disturb the judgment; Saratoga Land Company v. Jensen, 20 Wyo. 323, 123 Pac. 415; Kester v. Wagner, 22 Wyo. 520; the decision reached was a finding that neither

·party had submitted proof sufficient to sustain the judgment; that plaintiff had failed to accept and receive the oil and was not entitled to recover.

Brown, District Judge.

This is an ordinary action for the sale and delivery of goods, wares and merchandise, in which the plaintiff claims it did sell and deliver to the defendant, fuel oil, gasoline, and certain oil well fixtures, and delivered to the defendant the fuel oil under an agreement with the defendant that under certain circumstances hereinafter mentioned more particularly, that it was to charge for the delivery of the same to the defendant, in all, amounting to the sum of $3963.99.

The defendant in its answer admitted the buying of part of the materials and the gasoline and fuel oil from the plaintiff, but denied that it had received part of the gasoline and fixtures charged to it, and denied part of the delivery charges. For a further defense defendant claimed that plaintiff and defendant companies had entered into an agreement by which the plaintiff was to furnish the defendant with fuel oil and such oil well fixtures, consisting of piping and elbows, reducers, etc., as the defendant needed, and as the plaintiff was able to supply, and in payment therefor was to purchase crude oil from the defendant company. That the defendant company had stored quantities of crude oil for the plaintiff company and that the plaintiff company had refused to accept the same. That at the time the defendant company had the oil stored and was ready to deliver the same to the plaintiff, its market value was $3.25 per barrel. That it was finally compelled to sell the same to other parties after the market value had declined, at a price of $1.70 per barrel, and claimed damage by reason of the refusal of the plaintiff company to receive the crude oil of the difference between $3.25 per barrel and $1.70 per barrel.

The reply was a general denial and a special denial as to some items of defendants answer.

The case was tried to the court without a jury, and at the conclusion of the testimony, the court found against the plaintiff on its petition, and against the defendant on its cross-petition.  Plaintiff brings the action to this court on direct appeal, alleging three specifications of error, which are all substantially that the trial court erred in refusing to enter judgment for the plaintiff.

In the oral argument in this court, plaintiff's counsel contended that even under the theory of the defendant, plaintiff was entitled to some judgment.  The plaintiff's position is:

Conceding it to be true that the plaintiff company entered into a contract with the defendant whereby plaintiff was to furnish defendant certain materials, fuel oil, and gasoline, and to take its pay therefor in crude oil, supplied by the defendant company, and conceding that defendant company was ready and willing to deliver crude oil to the plaintiff company, at a time when oil was worth on the market at Osage, $3.25 per barrel, and that it did fail and refuse to do so, thereby compelling defendant to sell to other parties, after the market had declined, for $1.70 per barrel.  Conceding these things to be true, the plaintiff would still be entitled to judgment against the defendant in the amount that defendant company received at $1.70 per barrel, for an amount of oil necessary at $3.25 per barrel that it would have taken to have paid plaintiff's claim.  In other words that plaintiff would be entitled to 170/325ths of the balance due it.

Neither the bookkeeping, nor the methods of doing business of either of these companies is to be commended. The work of the courts is made difficult when cases of this character come into court.

. We understand something of the excitement and hustle in opening up a new oil field and are not surprised that other matters than bookkeeping receive most of the time and attention.

We have looked carefully into the transactions of the parties, as presented by the record, with the view of harmonizing the testimony and reaching such a conclusion as will amount to substantial justice between the parties. We find that as to some of the transactions there is but little dispute.

The plaintiff company was engaged in the business of operating an oil refinery at Osage, Wyoming, and handling some oil well fixtures. The defendant company was engaged in the business of developing certain oil lands and producing crude oil therefrom. The parties entered into an oral contract by the terms of which the plaintiff company was to furnish fuel oil, gasoline, piping and such oil well fixtures as the defendant company needed, and take its pay therefor in crude oil.

There is no dispute that the plaintiff company sold and delivered to defendant company under this arrangement fuel oil at $3.50 per barrel, and during a portion of the time were entitled to a delivery charge of $7.50 per tank. We quote from the testimony of E. S. Bailey, manager of the defendant company: "Q. State the agreement you had with this company? A. The agreement was that I was to take fuel oil from the Osage Refinery in exchange for crude. Q. Crude oil produced by whom? A. Ourselves. Q. What was to be done with reference to the crude oil? A. They were to take the crude oil at our tanks. Q. Was there anything in that agreement with reference to any delivery charges to your lease? A. The item of delivery charges didn't come up until later and when our No. 2 well come in, we didn't have as much crude to deliver to the refinery as we used in fuel oil, in other words we burnt more than we produced, and he explained to me that it was a hardship on them to send teams

out with fuel oil and go back to the refinery empty, and we came to an agreement that whenever they sent a team out with fuel oil and we had no crude oil that they were to make a charge for delivery.''

Quoting from another portion of his testimony with reference to the gas used: "Q. Mr. Bailey you say you used gas to run the pump out there? A. Yes sir. Q. Who was to furnish the gas? A. I was, that is up until the 12th of October. Q. And some of this gas, prior to the October 12th, came from the refinery? A. I think so. Q. And that gas you have no objection to being charged to the Glenn Oil Company, prior to October 12th? A. Yes sir. Q. Your objection, as I understand you is to charges of gas subsequent to October 12th? A. Yes sir.''

This condition existed until defendant brought in well No. 3 on October 12th. After that time the defendant company was producing and selling to plaintiff more oil than it was burning, and there is no serious contention that the delivery charges up to October 12th were not proper charges. We fail to find in the record any dispute as to the amount of fuel oil, claimed by the plaintiff to have been delivered to the defendant. The slips introduced in evidence by plaintiff as the original entries of the transaction show fuel oil, gasoline, deliveries and delivery charges amounting to $3097.39.

A man by the name of Peiffer was drilling and cleaning wells for defendant company under a contract by the terms of which defendant company furnished fuel oil and gasoline. This contract terminated October 12th. There was no attempt at the trial to deny these deliveries up to October 12th.

Giving the defendant credit for having delivered to plaintiff crude oil at $3.25 per barrel, amounting to $1079.86, a cable at $100.00 and pipe at $504.00, a total of $1673.86, leaves a balance in favor of the plaintiff in the sum of $1413.53.

The parties on one or more occasions attempted to arrive at an account stated and we now quote from the testimony of each of them to get their views as to the controversy. Quoting from the testimony of E. S. Bailey: "Q. You say you had a conversation out at the camp sometime in May this year? A. Mr. Lesley testified as to it being in May and I presume that is when it was. Q. Who was present? A. Mr. Lesley, Mr. Thompson and myself. Q. At that time you made some special offer in regard to paying the refinery company? A. Yes sir. Q. And isn't it true that Mr. Lesley cut down what you claimed you didn't owe? A. He didn't say he would throw that amount off the bill; he said that cuts down the bill quite considerably. Q. Who did you say was present at this conversation? A. Mr. Thompson, Mr. Lesley and myself. Q. And you stated on your direct examination, did you not, that Mr. Lesley said at that time that he couldn't accept your proposition; that he would have to take it up with the Board of Directors? A. Yes sir, at the time, out at the camp. Q. What else has he ever said about it? A. He said he thought we wouldn't be able to get together. Q. He never did make these deductions or agree to make them, did he? A. Yes sir. Q. Where? A. At the camp. He would have accepted a check for $1300.00 and settled it then and there, but I explained to him that I would stand on my contract and on account of the drop in the price of oil, without figuring out what the difference would be between $3.25 and $1.70 per bbl., I would be willing to give him a check for $650.00 and square the thing up, and he said he wouldn't be able to accept that as he would have to take it up with the Directors and he didn't think they would agree to that."

Quoting from the testimony of Mr. Lesley: "Q. Do you recall the amount that was left of your bill after the objections of Mr. Bailey had been eliminated? A. Something over $1200.00 that they owed us. Q. Something between $1200.00 and $1300.00? A. That is my recollection.

Q.   This memorandum shows a balance of—look at it please and see what it is?   A.   This indicates that it was $1359.46.''

So it would seem that after deducting all of the items objected to by defendant and giving credit for all deliveries of crude oil, and materials, there was still a balance in favor of plaintiff of over $1300.00, and this balance was not objected to by defendant, except on the theory that it had entered into a contract with plaintiff to pay its obligations to plaintiff in crude oil; that it had stored and offered to deliver more than enough crude oil at $3.25 per barrel to pay this or any balance found due, that by reason of the failure of the plaintiff to receive this crude oil, defendant was obliged to sell to another party at $1.70 per barrel.   There is sufficient testimony in the record to sustain this view.   But accepting this as the contract between the parties, the plaintiff would still be entitled to 170/325ths of the balance due it, or the sum of $739.23.

We appreciate the fact that we do not have the benefit of the presence of the witnesses and are not able to pass on their credibility, and are not attempting a critical analysis of the facts in the case.   We are endeavoring to reach our conclusion from the non-disputed facts in the record.

It seems improbable that any additional or clearer evidence can be produced at another trial.   The judgment herein entered will be reversed and the case remanded with directions to the trial court to render judgment in favor of plaintff for the sum of $739.23.

*Reversed and Remanded.*

BLUME, J., and RINER, District Judge, concur.

ON PETITION FOR REHEARING

BROWN, District Judge.

A petition for a rehearing has been filed herein.   It is claimed that the defendant lost $2790, by reason of the fact that plaintiff did not take 1800 barrels of oil.   The

claim is based on the theory that plaintiff was to take all the crude oil it had at $3.25 per barrel. But that theory is not sustained by the record. The defendant in its answer pleaded that it had been agreed between the parties that plaintiff should sell to the defendant and the defendant should purchase from the plaintiff certain materials and supplies, "and that defendant should pay for the same by the delivery of crude oil to such plaintiff." There was no claim that defendant should take all of the crude oil produced by plaintiff. This was also the view which the trial court took, and we think correctly, as clearly appears from the fact that it sustained an objection to the following question asked of Bailey, a witness on behalf of the defendant: "Was there anything in that agreement with reference to the Refinery Company taking *all* of the crude oil that you produced? "The objection to the question was sustained because nothing in the pleadings would justify such testimony. Hence the only damage sustained by defendant on the theory that the foregoing contract was made, which, by the way, was denied, was in connection with the amount actually due upon purchases of material from plaintiff, which we found to be $1413.53. In other words, plaintiff should have taken crude oil for this amount at $3.25 per barrel, or a little over 438.8 barrels. But this very oil was sold by defendant at $1.70 per barrel, bringing $739.23, the amount for which we ordered judgment to be entered for plaintiff. This amount clearly belongs to plaintiff. We might add that we gave a very liberal construction to the agreement. It may be a serious question, in any event, whether plaintiff was to take any crude oil for anything except the fuel oil, for Bailey, the sole person testifying that such agreement was made, stated that "the agreement was that I was to take fuel oil from the Osage Refining—(that of plaintiff) for crude." We, however, gave the defendant the benefit of the doubt on that point.

We might say, in passing, that notwithstanding the fact that we quoted some testimony in the original opinion which, perhaps, discloses some statements made by Bailey which were in the nature of a compromise, we were not influenced, as counsel for defendant think, by such statements. We arrived at the amount due plaintiff from the accounts introduced in evidence, the offsets claimed by defendant in its answer, and from practically undisputed testimony in the record, which cannot be construed as having any relation to any compromise. We gave the benefit of every doubt to defendant, but could not, after doing so, arrive at any conclusion different from that stated in the original opinion.

We can see no reason for a rehearing, which is accordingly denied.

*Rehearing Denied.*

BLUME, J., and RINER, D. J., concur.